UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT WEST,

          Plaintiff,

   v.

THERMO FISHER SCIENTIFIC, INC, a
Delaware Corporation.

          Defendant.

Civil Action No.:25-763

COMPLAINT FOR JURY TRIAL

Plaintiff, Robert West, by and through his attorneys, The Ottinger Firm, P.C., complaining of Defendant, THERMOFISHER SCIENTIFIC, INC., alleges as follows:

## INTRODUCTION

1. Plaintiff Robert West brings this action pursuant to the Family Medical Leave Act ("FMLA") 29 U.S.C. § 2615(a)(1) for FMLA interference, the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117 and New York State Human Rights Law, New York Executive Law § 296 et seq. for discrimination based on his association with a disabled individual, namely his mother.

## STATEMENT PURSUANT TO LOCAL RULE 9

2. For purposes of complying with Local Rule 9, Plaintiff states that he has no corporate parent, subsidiary, or affiliate and that there are no other interested parties.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 29 U.S.C. § 2617(a)(2).

1

4. Complete diversity of citizenship exists because Plaintiff is currently a resident of California (although was previously a resident of New York) and Defendant is incorporated in Delaware, with headquarters in Massachusetts. The amount in controversy exceeds $75,000.

5. Venue is proper in the Southern District of New York under Title I of the ADA, 42 U.S.C. § 12117(b) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3). Section 12117(b) states that "the powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides . . . to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or" its implementing regulations. 42 U.S.C. § 12117(b). Section 2000e-5 of Title VII of the Civil Rights Act provides that an action brought pursuant to Title VII may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed. 42 U.S.C. § 2000e-5(f)(3). The unlawful employment practices alleged in this action occurred in New York State. Accordingly, because Title I of the ADA adopts the venue provision found in Title VII of the Civil Rights Act, venue is proper in this judicial district.

6. Defendant is a corporate entity with a workforce of over one hundred employees. Defendant is a person within the meaning of 42 U.S.C. § 12111(7) and 29 U.S.C. § 2611(4).

7. Defendant is an employer within the meaning of 42 U.S.C. § 12111(5), and a covered entity within the meaning of 42 U.S.C. § 12111(2) and 29 C.F.R. § 1630.2.

8. Plaintiff has exhausted his administrative remedies by notifying the Equal Employment Opportunity Commission of his complaint on May 28, 2024, and will amend this Complaint to reflect when he receives his Right to Sue letter.

9. There is no administrative exhaustion requirement for Plaintiff's FMLA claims against Defendant.

**PARTIES**

10.    Plaintiff is currently a resident of California.  At all times mentioned herein, Plaintiff was a resident of New York.

11.    Defendant THERMO FISHER SCIENTIFIC, INC. was and still is a corporation engaged in bio-medical materials production and research.  Defendant is organized under the laws of the State of Delaware and its headquarters are located at 168 Third Avenue, Waltham, MA, 02451.

12.    At all relevant times, Defendant had and still has at least fifty employees working within this district, and the district in which the events took place.

**STATEMENT OF FACTS**

13.    In or around the summer of 2022, Defendant began recruiting Plaintiff for the role of Senior Director & Site Lead at its Grand Island, New York campus.

14.    Defendant ThermoFisher Scientific Inc. operates several facilities in Grand Island, New York with approximately 1,200 employees in total, between the facilities. Defendant recruited Plaintiff to lead two of its Grand Island sites, with responsibilities to lead multiple functions while also managing Defendant's production process at Grand Island, to improve output and process control.

15.    Plaintiff was recruited by Defendant while Plaintiff was working in San Diego, California.  As the Senior Director & Site Lead role required on-site attendance, Defendant offered Plaintiff assistance and flexibility in Plaintiff's relocation to New York.

16.    On July 8, 2022, Plaintiff accepted Defendant's offer, with a start date of September 20, 2022.  To facilitate Plaintiff's relocation, Defendant provided Plaintiff with unlimited paid time off ("PTO") and a relocation support package to assist with the transition.

3

17.    The company had a policy concerning remote work that allowed individuals across levels to work remotely, including individual contributors, multi-level managers, directors, vice presidents, and others. Plaintiff's supervisor, Todd Kundinger, Vice President of Operations of the Biologicals and Chemicals Division, worked remotely 100% of the time. At the Grand Island location, partial and complete teams worked remotely during Plaintiff's time there; upon information and belief, those teams continue to work remotely.

18.    In or around February 2023, Plaintiff purchased a home near Newfane, New York, near Defendant's Grand Island operations.  From that point onward, Plaintiff continued to travel from New York to California approximately every three to four weeks at his own expense. Plaintiff undertook this travel with Defendant's express or implicit approval, as he traveled to care for his mother and to assist his wife with preparing their home for sale, an essential step for completing the required relocation to New York. Throughout each of these trips, Plaintiff continued to perform and follow all relevant company procedures, by either working remotely or using approved unlimited PTO.

19.    Between July 1, 2023, and September 4, 2023, Plaintiff's 94-year-old mother had at least three falling incidents, which were later diagnosed as possible "mini-strokes." These occasions required Plaintiff to fly from New York to California beyond what he had envisioned necessary to provide care and assistance to his mother.  Each time Plaintiff flew to and from California and New York, or vice versa, he informed his supervisors of his actions, his intended return date, his mother's status, and confirmed his ability to continue to perform all responsibilities of his role via remote work, as per company policy or practice. During this period, Plaintiff notified his supervisor Todd Kundinger and his administrative assistant, Tracey LoGrasso, each time he took PTO or other approved leave, as well as the reason for the leave. On or around July 8, 2023, Plaintiff had completed more than 1,250 hours of work in the

proceeding 12 –months and was therefore eligible for FMLA leave.  Defendant then employed over 1,000 employees at its Grand Island, NY location and is thus a "covered employer" for FMLA purposes.

20.     Plaintiff had discussions with Mr. Kundinger, inquiring whether he might apply for FMLA leave for the time he was traveling or leveraging remote work capability to discharge the responsibilities of his role, while physically present in California to care for his mother. However, Mr. Kundinger told Plaintiff that such an FMLA request would probably be denied. Mr. Kundinger posited that Plaintiff's site leader position would be deemed "too critical" to be eligible for extended leave under FMLA.  Instead, Mr. Kundinger instructed Plaintiff to continue his practice of requesting time off as needed directly from Mr. Kundinger, but, from now on, to make such requests orally, as opposed to written email communications.  As a result of Mr. Kundinger's guidance - which on account of Mr. Kundinger's senior status within the Company - Plaintiff reasonably inferred was Defendant's formal instruction as applied to his circumstances under Defendant's policies.  Plaintiff was therefore dissuaded from applying for FMLA leave and did not file any formal leave paperwork for PTO, FMLA or otherwise.  Instead, Plaintiff focused on minimizing the days it was necessary for him to work offsite remotely by traveling on evening or red-eye flights.  He paid close attention to his mother's condition, deferring and delaying travel until his mother's condition worsened to the point that intervention and direct care from Plaintiff became strictly necessary.

21.     Plaintiff had subsequent discussions with John Wutz, Defendant's Grand Island Site's Human Resources Senior Manager, about Plaintiff's discussions with Mr. Kundinger concerning FMLA.  Plaintiff relayed Mr. Kundinger's statement regarding Plaintiff's FMLA request to Mr. Wutz and that such a request would likely be denied due to Plaintiff's position being too critical. Mr. Wutz stated he agreed with Mr. Kundinger's assessment, namely that there

was a high probability that Plaintiff's FMLA request would be denied.  Due to Mr. Wutz's agreement with Mr. Kundinger, Plaintiff again felt strongly dissuaded from applying for FMLA leave.

22.    On or about October 17, 2023, Plaintiff's brother-in-law unexpectedly passed away. Plaintiff communicated this news to his supervisors and took PTO for the funeral, while still completing his duties timely and fully, via remote work.

23.    On November 23, 2023, Plaintiff visited his mother in California for Thanksgiving. Shortly thereafter, on or about November 26, 2023, Plaintiff's mother and wife were each diagnosed separately with COVID-19. Plaintiff communicated these developments to his supervisors immediately by phone and text while advising them that he would fly back to New York after the proscribed quarantine period for a likely COVID-19 exposure. On or about December 5, 2023, Plaintiff returned to Defendant's Grand Island site.   On December 6, 2023, Plaintiff received an email from Mr. Kundinger admonishing Plaintiff for having been "on-site for less than 60% of working days during the past 6 months."  The email went on to falsely claim that Defendant had provided two extensions to Plaintiff for him to complete his relocation to New York and criticized Plaintiff for not yet completing the relocation and continuing to "work remotely several days at stretch."  The email further stated that, as of January 2, 2024, Plaintiff's "failure to relocate and be present at the Grand Island site for a minimum of twenty (20) days per month will result in disciplinary action up to and including termination of your employment."

24.    Plaintiff was surprised by the email from Mr. Kundinger admonishing him for taking approved leave to care for his mother, after Mr. Kundinger and Mr. Wutz had each separately dissuaded Plaintiff from applying for FMLA leave.  Nonetheless Plaintiff took heed of the express direction given in Mr. Kundinger's email, and endeavored to ensure his presence in Grand Island, New York.

25.    Mr. West was a resident at his Newfane property and worked at the Grand Island office from December 6, 2023, to the evening of December 22, 2023, when he returned to California for the Christmas holidays, particularly given the Grand Island site was scheduled to be shut down for a two-week period.

26.    On or about January 10, 2024, Plaintiff's mother was hospitalized in California with severe COVID-19 symptoms. On or about January 18, 2024, Plaintiff flew to California to discuss treatment options with his mother's physicians as he alone held power-of-attorney for his mother, who was incapacitated at that time.  Plaintiff communicated these developments to Mr. Kundinger, Mr. Wutz, and Mrs. LoGrasso and received Mr. Kundinger's approval to work remotely from California while he cared for his mother.

27.    On or about January 24, 2024, Plaintiff returned to Grand Island, New York to be on-site as required by Defendant.  For the month of January 2024 there were a total of eighteen (18) working days; Plaintiff was on-site at Grand Island for fourteen (14) of the 18 working days. Plaintiff worked remotely with no response from Mr. Kundinger on email and PTO requests for the remaining four (4) days.

28.    On or about January 28, 2024, Plaintiff's mother was taken to the Temecula Healthcare Center in Temecula, California when she lost the ability to walk.  On or about February 11, 2024, Plaintiff flew to California to assist his mother with her release from the hospital and then immediately flew back to New York on February 13, 2024.  Plaintiff worked remotely on the intervening days (February 11 -13, 2024, inclusive of travel) and continued to ensure that he discharged all responsibilities of his role while working remotely.  For the month of February 2024, there were a total of twenty (20) working days; Plaintiff was on-site for seventeen (17) of the days and worked remotely with Mr. Kundinger's knowledge as he never responded to email or PTO requests for the remaining three working days.

7

29.    Despite Plaintiff being onsite at Defendant's Grand Island facility for all working days possible since January 2, 2024 – and only working remotely when a qualified family medical emergency occurred during that period – on or about February 27, 2024, Defendant terminated Plaintiff for "not being on-site enough."  Plaintiff understood this to mean that his family members' medical issues, which required his presence and which he was twice told by Defendant's senior staff to not apply for FMLA leave to cover, were the reason for his termination. Mr. Kundinger and Mr. Wutz both confirmed that family health matters take precedence over work several times during the year.

## FIRST CAUSE OF ACTION

### (FMLA Interference - 29 U.S.C. §2615(a)(1))

30.    Plaintiff realleges and incorporates by reference the preceding paragraphs.

31.    At all times relevant to this Complaint, Defendant was a covered employer under the Family and Medical Leave Act ("FMLA"), as it was engaged in an industry affecting commerce, and it employed fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year. 29 U.S.C. § 2611(4).

32.    Plaintiff was covered under the FMLA as an employee with a parent with a serious health condition, was employed by Defendant for at least twelve months, and who had performed at least 1,250 hours of service during the previous twelve-month period. Id. § 2611(2).

33.    Under the FMLA, "[i]t shall be unlawful for any employer to *interfere with*, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id*. § 2615(a) (emphasis added).  "Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004), *citing* 29 C.F.R. § 825.220(b).

34.     In addition, "the obligation of an employee to give notice of his need for FMLA leave is not the obligation . . . to provide the employer with all of the necessary details to permit a definitive determination of the FMLA's applicability at or before the time of the request. Rather, in the absence of a request for additional information, an employee has provided sufficient notice to his employer if that notice indicates reasonably that the FMLA may apply." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 111 (2d Cir. 2017).

35.     The FMLA's "prohibition against interference prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights. . . ." 29 C.F.R. § 825.220(c).

36.     "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." *Id.*

37.     Employers who violate the FMLA "may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered." *Id*. § 825.220(b); 29 U.S.C. § 2617.

38.     Both Plaintiff's supervisor and Human Resources personnel discouraged and refused to authorize Plaintiff from requesting and accessing FMLA leave, in violation of 29 C.F.R. 825.220(b). Defendant had full knowledge that Plaintiff was caring for his mother with a qualifying disability under the FMLA, and that he qualified to access FMLA leave. Plaintiff repeatedly kept Defendant apprised of his mother's medical care. When speaking with Mr. Wutz from Human Resources, instead of facilitating Plaintiff's request to apply for and receive FMLA leave, he explicitly joined Mr. Kundinger's unlawful position that Plaintiff would not receive FMLA given his position – *not* based on any lawful consideration or a qualifying condition. Instead, Defendant unlawfully deterred and interfered with Plaintiff's ability to request and take

FMLA leave, even though he qualified for it, effectively constructively and preemptively denying him FMLA leave. *See* 29 C.F.R. § 825.300; *see also Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63, 69 (2d Cir. 2024) ("an employer can violate the FMLA merely by interfering with the employee's benefits under the FMLA without actually denying the employee's request for those benefits. "[A]n employee is not required to demonstrate an actual denial of benefits to establish a violation . . . and that interference or restraint alone, *which includes discouragement, is enough to establish such a violation.*"") (emphasis added).

39.     Even when Defendant knew that Plaintiff had requested FMLA leave and they had full knowledge that he was qualified for it and was caring for his very ill mother, they refused to facilitate his application for FMLA and instead punished him for inquiring about it by terminating him shortly after. Plaintiff continued to work in person 80% of the time while flying bi-coastly to care for his mother, minimizing as much as possible being physically off site.

40.     Defendant discriminated against Plaintiff in violation of the FMLA when Defendant terminated Plaintiff a few weeks after he returned from PTO (while also working remotely) to care for his mother. In addition, although Plaintiff qualified for intermittent FMLA leave, Defendant unlawfully interfered with Plaintiff's right to reinstatement and other rights under the FMLA.

41.     Defendant's actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the FMLA.

42.     Plaintiff has suffered damages as a result of Defendant's unlawful actions.

## SECOND CAUSE OF ACTION

### (ADA ASSOCIATIONAL DISCRIMINATION - 42 U.S.C. §12112(b)(4)

43.     Plaintiff realleges and incorporates by reference the preceding paragraphs.

44.     Title I of the ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630, requires covered employers, such as Defendant, to provide reasonable accommodations to otherwise qualified employees who are known to have a relationship or association with a disabled person.

45.     Reasonable accommodations include, but are not limited to, authorizing remote work and allowing for reasonable adjustments to relocation schedules.

46.     Plaintiff is an otherwise qualified individual who is known to be closely related to someone with a life-impairing disability, namely his mother.  As stated above, Plaintiff notified Defendant of his mother's disability and requested to work remotely while he cared for her. Despite other similarly situated employees working remotely – including his own supervisor - Defendant informed Plaintiff that his physical presence was required at Defendant's Grand Island site for a minimum of twenty (20) days per month.

47.     Plaintiff endeavored to be physically present as required by Defendant and was on-site for more than 80% of working days prior to his termination; Plaintiff only worked off-site to care for his mother.

48.     Despite Plaintiff's presence on-site for more than 80% of working days, Defendant terminated Plaintiff, claiming it was because Plaintiff was too often off-site caring for his disabled mother.

49.     Defendant's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of Title I of ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630.

50.     As a result of Defendant's discriminatory conduct, Plaintiff suffered and continues to suffer damages.

**THIRD CAUSE OF ACTION**

11

**(ASSOCIATIONAL DISABILITY DISCRIMINATION – NYSHRL § 296)**

51.     Plaintiff realleges and incorporates by reference the preceding paragraphs. New York State Human Rights Law § 296 and its implementing regulations, including 9 C.C.R.--NY § 466.14, prohibit discrimination against an individual based on his association with a disabled person.

52.     Plaintiff is an individual who is known to be closely related to someone with a life-impairing disability, namely his mother.  As stated above, Plaintiff notified Defendant of his mother's disability and requested to work remotely while he cared for her; despite other similarly situated employees working remotely, Defendant informed Plaintiff that his physical presence was required at Defendant's Grand Island site for a minimum of twenty (20) days per month.

53.     Plaintiff endeavored to be physically present as required by Defendant and was on-site for more than 80% of working days prior to his termination and only worked off-site to care for his mother.

54.     Despite Plaintiff's presence on-site for more than 80% of working days, Defendant terminated Plaintiff, claiming it was because Plaintiff was too often off-site caring for his disabled mother.

55.     Defendant's conduct as described in this Complaint constitutes discrimination on the basis of Plaintiff's mother's disability in violation of New York State Human Rights Law § 296, and its implementing regulation, 9 CRR-NY § 466.14.

56.     As a result of Defendant's discriminatory conduct, Plaintiff suffered and continues to suffer economic and emotional distress damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests:

12

(1)     A declaratory judgment that Defendant intentionally discriminated against Plaintiff in violation of the FMLA, ADA and NYSHRL;

(2)     An injunction ordering Defendant to reinstate Plaintiff to his prior position of employment with Defendant, with such retroactive promotions and benefits as Plaintiff would have received had he not been terminated;

(3)     A declaratory judgment that Plaintiff did not breach his relocation agreement and thus does not have to repay any of its benefits;

(4)     An order requiring Defendant to undergo periodic FMLA and ADA training subject to Plaintiff's approval;

(5)     Back pay with interest;

(6)     Payment of interest on all back pay recoverable;

(7)     Compensatory and punitive damages;

(8)     Attorneys' fees and costs;

(9)     Such other relief that this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action and claims with respect to which he has a right to jury trial.

Dated: January 27, 2025          Respectfully submitted,
      New York, New York          **THE OTTINGER FIRM, P.C.**

By: _____
Robert W. Ottinger (SBN 156825)
THE OTTINGER FIRM, P.C.
418 Broadway Suite N
Albany, New York 12207
robert@ottingerlaw.com
Tel: 415-262-0096
Fax: 212-571-0505

*COUNSEL FOR PLAINTIFF*